**Mary A. MASON**

v.

**The ASSOCIATION FOR INDEPENDENT GROWTH.**

**Civ. No. 91–2524.**

United States District Court, E.D. Pennsylvania.

March 17, 1993.

---

Lanier E. Williams, Philadelphia, PA, for plaintiff.

Robert M. Goldich, Rachel S. Lieberman, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

In this action, plaintiff Mary Mason alleges, pursuant to 42 U.S.C. § 1981 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, that she was denied a promotion by her former employer, The Association for Independent Growth ("TAIG"), because of her race and age.[1] Before me is a partial summary judgment motion filed by defendant TAIG, seeking to delimit the terms of plaintiff's damages (doc. # 37). Mason has responded to this motion. For the reasons that follow, defendant's motion will be denied insofar as it seeks to limit plaintiff's damages to the difference in pay scale between the position to which she aspired and the position in which she remained.

### I.

The following facts are essentially undisputed. Mason, a black woman, was hired as a Project Director at TAIG—a nonprofit organization that provides residential and day programs to persons diagnosed as mentally retarded or mentally ill—on May 23, 1988. At that time, she was fifty years old. As a Project Director, her primary responsibility was supervising staff at residence placements in the field.

On April 10, 1989, Christine DeVore—a thirty-five year old white woman—was upgraded from a part-time position as a "Temporary Residential Monitoring Coordinator" to a newly-created, full-time position of "Assistant Residential Director" in the headquarters of TAIG. The decision to create that position and give it to DeVore was made by TAIG's Executive Director, Joseph Bucci, who was then thirty-nine years old. Bucci never posted the position even though TAIG's policy, set out in an employee handbook, specifies that position vacancies are to be posted on bulletin boards at all program locations for ten days. Mason claims that she would have applied for the Assistant Residential Director job had she known

---

1. Mason has agreed to dismissal of a discrimination claim brought under the Pennsylvania Human Relations Act; accordingly, that claim will be dismissed.

about it, and that she was denied the opportunity to apply because of her race and age.

On October 2, 1989, allegedly while travelling from one field site to another during the course of her regular work as a Project Director, Mason was injured in an automobile accident. Thereafter, Mason took several disability leaves from TAIG, claiming that she could not perform her work. From the time of her accident until she resigned from TAIG in May 1992[2] (a period of about two-and-a-half years), Mason worked only about five months and received workmen's compensation benefits for all the periods of her absence. These benefits were set by law at two-thirds of her Project Director salary.

## II.

This motion presents the issue whether, in a failure-to-promote case, a back pay award should include salary lost on account of work-related injuries that the discriminatee might have avoided if promoted. Through this motion, TAIG seeks a determination that Mason's maximum recovery on her discrimination claims is the difference between her stated Project Director salary—notwithstanding that for some two-and-a-half years she received no salary and instead received statutory benefits amounting to two-thirds of salary—and Christine DeVore's salary in the course of the three-odd years between DeVore's placement in the job of Assistant Resident Director (April 1989) and Mason's resignation from TAIG (May 1992). Because the salary differential is approximately $3,000 annually, on defendant's calculus Mason would in no event be entitled to more than approximately $10,000 in back pay (3 × $3,000).[3] Mason—who argues that she would not have been involved in the automobile accident had she been promoted to the position of Assistant Resident Director (a headquarters job which allegedly did not demand regular driving visits to field sites)—contends

that she should be able to recover the full amount of DeVore's salary as an Assistant Resident Director over the three years, unreduced by either (1) the stated Project Director salary, which, due to her series of disability leaves, she did not in fact receive;[4] or (2) the workmen's compensation benefits she did receive.

### A. Salary Lost Due to Plaintiff's Disability

 The underlying premise in computing an employment discrimination plaintiff's award—whether under Title VII, section 1981 or the ADEA—is that the injured worker must be restored to the economic position in which the worker would have been but for the discrimination. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (The purpose of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination"); *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 796 (3d Cir.1985) ("Congress intended victims of age discrimination to be made whole by restoring them to the position they would have been in had the discrimination never occurred."), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *T & S Serv. Assocs., Inc. v. Crenson,* 666 F.2d 722, 728 (1st Cir.1981) (same for § 1981). Under this make-whole philosophy, a successful § 1981 or ADEA plaintiff is entitled to compensation for loss of past wages (i.e., back pay). *Gunby v. Pennsylvania Elec. Co.,* 840 F.2d 1108, 1119 (3d Cir.1988) (§ 1981/Title VII plaintiff), *cert. denied,* 492 U.S. 905, 109 S.Ct. 3213, 106 L.Ed.2d 564 (1989); *McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214, 217 (3d Cir.1984) (ADEA plaintiff), *vacated and remanded on other grounds,* 469 U.S. 1202, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985); *Craig v. Y & Y Snacks,* 721 F.2d 77, 85 (3d Cir.1983) (back pay is "the presumptive remedy for unlawful employment discrimination"). "The appropriate standard for the measurement of a

---

**2.** Mason voluntarily resigned, and she is not seeking a prospective remedy.

**3.** TAIG further contends that salary Mason received working part-time for the University of Pennsylvania while she was on disability leave may also be an offset to the $10,000; however, TAIG is not seeking a ruling on this question at

this time, and the parties have not briefed the issue.

**4.** Mason appears to allow that her back pay award should be reduced by the amount of salary she received for the five-or-so months that she was actually working as a Project Director.

back pay award is to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained." *Gunby,* 840 F.2d at 1119.

■■■ Taking the "actual" wage formula at face value, one might think it obvious that a back pay award should not be reduced by stated salary that a plaintiff never actually received. However, in a variety of situations, a back pay award is reduced, or eliminated entirely, if the plaintiff has not received—or, indeed, could not receive—offsetting income in the post-discriminatory period. The federal discrimination statutes at issue in this case require mitigation of damages. *See Maxfield,* 766 F.2d at 794 n. 5 (ADEA); *Craig,* 721 F.2d at 82 (Title VII); 42 U.S.C. § 2000e–5(g) ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable").[5] Therefore, an employer is allowed to offset any amount that the employee did not actually receive, but should have received, if reasonably diligent. Further, as a general rule, a claimant will not be allowed back pay during any periods of disability. *See NLRB v. Louton, Inc.,* 822 F.2d 412, 415 (3d Cir.1987); *Canova v. NLRB,* 708 F.2d 1498, 1505 (9th Cir.1983); *Loubrido v. Hulls Dobbs Co.,* 526 F.Supp. 1055, 1061 (D.Puerto Rico 1981) (footnote omitted) (excluding from back pay calculation a period in which plaintiff was disabled because "under such circumstances he could not have worked for the defendant or anybody else"). That is to say, if Mason had sustained her injuries while on a sight-seeing trip during a vacation, she likely would not be able to recover any back pay at all during the time that she was unavailable to work (or would only be able to

recover the difference in disability pay between the two jobs) on the theory that she similarly would not have been able to work as an Assistant Residential Director. *See Soto Segarra v. Sea–Land Serv., Inc.,* 581 F.2d 291, 297 (1st Cir.1978) (back pay award must be adjusted to account for heart attack plaintiff suffered sometime after his discharge); *see also NLRB v. Gullett Gin Co.,* 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951) (emphasis in original) ("[N]o consideration has been given or should be given to collateral *losses* in framing an order to reimburse employees for their lost earnings...."); *American Mfg. Co.,* 167 N.L.R.B. 520, 522 (1967) ("As the claimant's loss [of income due to illnesses] therefore cannot be said to have a likely relationship to the unlawful discrimination, disallowance of back pay for all periods of unavailability because of such illnesses is proper."). In short, it is clear that an employer who has discriminated need not reimburse the plaintiff for salary loss attributable to the plaintiff and unrelated to the employment discrimination.

■■■ In the case at bar, however, Mason argues that she would not have sustained the income-reducing injury had she been promoted to a job that required significantly less driving; therefore, on Mason's view, to be made whole she must be awarded full back pay for the periods of work she missed due to disability. *Cf. Wells v. North Carolina Bd. of Alcoholic Control,* 714 F.2d 340, 342 (4th Cir.1983) (plaintiff, denied promotion from stock clerk to sales clerk on account of his race, entitled to back pay award after he left his stock clerk job due to back problems because "[h]ad he not been wrongfully denied that promotion to relatively light work, it may reasonably be inferred that he would not have suffered an injury to his back or that any back problem would have been less

---

5. The case at bar is brought under § 1981, not Title VII. While the cases cited in the text do not mention whether a plaintiff is required to mitigate damages under § 1981, there is no reason to believe that § 1981 does not similarly require mitigation of damages. *Cf. Murphy v. City of Flagler Beach,* 846 F.2d 1306, 1309 (11th Cir. 1988) (mitigation of damages appropriate under § 1983). The legal standards in § 1981 cases and Title VII cases are interchangeable, *Lewis v. Univ. of Pittsburgh,* 725 F.2d 910, 915 n. 5 (3d

Cir.1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984); *see New York City Transit Auth. v. Beazer,* 440 U.S. 568, 583–84 n. 24, 99 S.Ct. 1355, 1364–65 n. 24, 59 L.Ed.2d 587 (1979) ("[Section 1981] affords no greater substantive protection than Title VII."), and the character of a back pay award does not change because the award is made pursuant to § 1981 rather than Title VII, *Johnson v. Chapel Hill Indep. Sch. Dist.,* 853 F.2d 375, 383 (5th Cir. 1988).

severe.... Wells reasonably ended his employment for reasons beyond his control, reasons which were causally linked to the defendant's wrongful denial of a promotion."), *cert. denied,* 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 176 (1984); *Whatley v. Skaggs Cos.,* 508 F.Supp. 302, 304 n. 1 (D.Colo.1981) (Plaintiff Whatley entitled to full back pay during the three years that he did not work due to a back injury because "Whatley would not have suffered his disabling back injury had [defendant] not terminated him as lobby manager. [Defendant's] act of discrimination forced Whatley from his management position into blue-collar jobs that required strenuous physical labor resulting in injury to his back."), *aff'd in relevant part,* 707 F.2d 1129 (10th Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983).[6] While it is true that Mason's argument depends on counterfactual speculation as to whether she similarly would have gotten into an accident had she been promoted to Assistant Residential Director, back pay award determinations inevitably involve recreating the conditions that would have existed absent the unlawful discrimination, and "[t]his process of recreating the past will necessarily involve a degree of approximation and imprecision." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 372, 97 S.Ct. 1843, 1873, 52 L.Ed.2d 396 (1977); *see also Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3d Cir.1977) ("Trial courts and the parties themselves invariably lack perfect insight to forecast what would have happened had there been no unlawful acts."), *cert. denied,* 436 U.S. 913, 98

S.Ct. 2254, 56 L.Ed.2d 414 (1978); *cf. Blum v. Witco Chemical Corp.,* 829 F.2d 367, 375 (3d Cir.1987) (rejecting argument that speculative nature of future damages is a reason for denying such awards). "The risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim," *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 889 (3d Cir.1984); therefore "[a]ny ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer," *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 628 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); *see also McKenzie v. Sawyer,* 684 F.2d 62, 77 (D.C.Cir.1982) (all doubts in calculating damages "are to be resolved against the proven discriminator rather than the innocent employee"); *EEOC v. Blue and White Serv. Corp.,* 674 F.Supp. 1579, 1580 (D.Minn.1987) ("[D]oubts about plaintiff's entitlement to back pay and its amount should be resolved against the employer").

Given the important reasons of statutory policy for resolving doubts relating to damages in favor of the innocent employee, it would be permissible to infer that Mason would not have suffered the disabling injuries had she been promoted and that she therefore should be reimbursed for salary lost due to the accident, provided that (1) Mason's injury was sustained during the course of her employment, and (2) the Project Director job entailed significantly more driving than the

---

**6.** Defendant tries unsuccessfully to distinguish *Wells* and *Whatley* in two ways. First, TAIG argues that, in these cases, the employer directly "caused" the injury by refusing to assign the plaintiff to lighter work, whereas, in the case at bar, TAIG "did nothing to cause Mason's injury." Defendant's Reply Brief at 6. However, the difference is more apparent than real. Just as the work that Wells and Whatley were required to perform because of their employers' discriminatory conduct led to injury, so it might equally be said that Mason's continued field work, necessitating regular automobile travel, led to her automobile accident. I am not prepared to hold, as a matter of law, that the possibility that an employee who must regularly drive in the course of his employment will be injured in an automobile accident is that much more remote or unforeseeable than the chance that a manual laborer will injure his back doing heavy lifting. Second,

TAIG argues that these cases show that a discriminatee's disability should be ignored in calculating damages, while Mason, according to TAIG, is in effect trying to gain a windfall from her injury. However, the *Whatley* and *Wells* courts *did* figure the discriminatee's injury into the back pay calculation. In each case, the court held that although an employee normally cannot recover back pay after abandoning employment or while disabled, an injury that is causally connected to the employment discrimination in essence relieves the discriminatee of any duty to mitigate damages during the period of disability. Therefore, it is entirely consistent with *Whatley* and *Wells* to hold that once a discriminatee becomes unable to receive salary because of a discrimination-related injury, the discriminatee's damages should not be reduced simply because she remains nominally employed.

Assistant Residential Director position. Because these two provisos are essentially questions of fact, it will be up to the jury, if it finds that TAIG discriminatorily denied Mason a promotion, to determine whether plaintiff has proven by a preponderance of the evidence that (1) Mason's injury was sustained during the course of her employment and (2) the Project Director job entailed significantly more driving than the Assistant Residential Director position. If the jury finds that these conditions are met, then the back pay award will not be offset by the stated Project Director salary that Mason never received due to the automobile accident.[7] Only by taking account of such losses will the back pay award serve its purpose of "completely redress[ing] the economic injury the claimant has suffered as a result of discrimination." *Rasimas*, 714 F.2d at 626.

**B. Deductibility of Workmen's Compensation Benefits**

 This leaves only the question of whether—in the event that (1) Mason prevails on either her race discrimination claim or her age discrimination claim and (2) the stated Project Director salary is not deducted from her back pay award, *see supra* Part II, A—Mason's workmen's compensation benefits, accounting for two-thirds of her Project Director salary, should be offset against amounts received as back pay. Monetary damages paid by employers who practice unlawful discrimination serve two principal purposes: (1) to deter illegal employment practices; and (2) to recompense individuals for injuries caused by the employer's conduct. *Rodriguez*, 569 F.2d at 1237. In my view, neither purpose is served by forcing TAIG to repay as back pay amounts already paid to Mason as workmen's compensation benefits for lost wages. .

 The "collateral source" doctrine "permits a tort victim to recover more than once for the same injury provided these recoveries come from different sources." *Smith v. United States*, 587 F.2d 1013, 1015 (3d Cir.1978) (footnote omitted); *see* Restatement (Second) of Torts § 920(A)(2) (1979).

For example, an accident victim may recover medical expenses from a tortfeasor even though the victim's own insurance policy covers such costs. *Smith*, 587 F.2d at 1015. Courts have split on the question whether workmen's compensation benefits are subject to the "collateral source" rule and hence not to be deducted from an employment discrimination back pay award. *Compare Knafel v. Pepsi–Cola Bottlers of Akron*, 899 F.2d 1473, 1480 (6th Cir.1990) (workmen's compensation benefits not deductible); *Cline v. General Elec. Capital Auto Lease*, 757 F.Supp. 923, 933 (N.D.Ill.1991) (apparently awarding plaintiff full salary for two years in which she received disability pay); *Catlett v. Missouri State Highway Comm'n*, 627 F.Supp. 1015, 1018 (W.D.Mo.1985) (same as *Knafel*); *with Nichols v. Frank*, 771 F.Supp. 1075, 1079 (D.Or.1991) (back pay award must be reduced by the amount that plaintiff received pursuant to her workmen's compensation claim); *Austen v. Hawaii*, 759 F.Supp. 612, 629 (D.Hawaii 1991) (same), *aff'd* 967 F.2d 583 (1992); *Blue and White*, 674 F.Supp. at 1583 (workmen's compensation award should be offset, insofar as it was attributable to lost wages). As plaintiff points out, the Third Circuit has held that unemployment compensation should not be deducted from a back pay award under Title VII, *Craig*, 721 F.2d at 81–85, or under the ADEA, *McDowell*, 740 F.2d at 215–17. Similarly, the Third Circuit has held that social security benefits cannot be set off against back pay awards under Title VII. *Maxfield*, 766 F.2d at 793–95. In those cases, the Third Circuit, focusing on what the defendant should pay rather than what the plaintiff should receive, reasoned that a wrongdoer should not get the benefit of payments that come to the plaintiff from a source collateral to the defendant. In *Craig* (on which *McDowell* and *Maxfield* built), the Third Circuit expressly relied on the Supreme Court's reasoning in *Gullett Gin, supra*, where the Court upheld the NLRB's refusal to deduct unemployment compensation from back pay. The *Gullett Gin* Court observed:

7. However, it may be that TAIG will be allowed to offset the amounts Mason actually received

from the University of Pennsylvania. *See supra* note 3.

Payments of unemployment compensation were not made to the employees by respondent but by the state out of state funds derived from taxation. True, these taxes were paid by employers, and thus to some extent respondent helped to create the fund. However, the payments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the entire state.

349 U.S. at 364, 71 S.Ct. at 340.

The workmen's compensation benefits that Mason received are distinguishable from collateral benefits such as unemployment compensation and social security benefits.[8] First, workmen's compensation benefits, unlike unemployment compensation and social security, come directly and entirely from the employer or from insurance premiums paid wholly by the employer. *Cf. EEOC v. Sandia Corp.,* 639 F.2d 600, 627 (10th Cir.1980) (offsetting severance pay "since it is a payment made wholly by the employer; thus it is not a collateral benefit ..."); *Whatley v. Skaggs Cos.,* 502 F.Supp. 370, 377 (D.Colo. 1980) (predecessor opinion to—and supplemented by—*Whatley, supra* ) (refusing to deduct disability pay coming from another employer, but noting that "[t]here might be justification for reducing the award by this amount if [plaintiff] had been in [defendant's] employ when the disability occurred, since [defendant] would have paid premiums for disability insurance."). Therefore, offsetting these benefits does not bestow an unjust windfall on the wrongdoer or create a risk of loss of deterrence value. Secondly, a work-

men's compensation award—which is pegged specifically to the employee's salary, *see* Pa. Stat.Ann. tit. 77, §§ 25.2, 511, 512 (1992)—is "a purely compensation measure" designed "to provide recompense commensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employer." *Rudy v. McCloskey & Co.,* 35 A.2d 250, 253 (Pa.1944). Because workmen's compensation benefits and back pay awarded during a period of disability accomplish quite similar goals, the NLRB—which the Supreme Court and the Third Circuit followed with respect to the nondeductibility of unemployment compensation benefits—deducts workmen's compensation benefits from a back pay award as the price of allowing employees to receive back pay during periods of disability.

[W]here backpay is awarded for the same period for which wages have already been replaced in part, to continue to hold the wage portion of the award to be nondeductible would result in double payment to the employee for that period, and hence this part is more accurately regarded as deductible interim earnings. However, the portion of the award which is reparation for physical damage suffered is unrelated to wages earned, does not result in double wage payment to the discriminatee, and continues to be excludable from interim earnings.

*American Mfg. Co.,* 167 N.L.R.B. at 523 (footnote omitted).[9] Therefore, at least as far as Mason's disability pay is attributable to lost salary,[10] refusal to deduct this sum

---

8. Indeed, the Third Circuit appears to have recognized this distinction. Despite the clear authority of *Craig, McDowell,* and *Maxfield,* the Third Circuit, in *Miller v. Bolger,* 802 F.2d 660, 666 n. 5 (3d Cir.1986), left open the question of what relief might be recoverable under Title VII for lost wages if the plaintiff is also recovering lost wages under the Federal Employees' Compensation Act (FECA), but stated that "we do not suggest that there could be a double recovery in the event some of the relief available under FECA and Title VII were to overlap ..." *Id.; cf. Blum,* 829 F.2d at 373 (holding that lost pension benefits are recoverable as front pay, but cautioning "that such benefits may not be available where an award would make a plaintiff more than whole ...").

9. This is still the law in NLRB actions. *See Canova,* 708 F.2d at 1504.

10. Mason may offer proof that some portion of the sum awarded to her was, under Pennsylvania law, allocated for physical impairment. *See Canova,* 708 F.2d at 1504 (declining to offset a permanent disability award because California courts do not consider such awards as payment for past lost wages); *Blue and White,* 674 F.Supp at 1583 (noting that, under Minnesota law, the discriminatee received $9,000 for total and partial disability, computed as two-thirds of his weekly wage rate, and $8,000 for impairment compensation based on loss of bodily function, and deducting only the former from the back pay award).

would result in both punitive double payment by TAIG and unwarranted double recovery by Mason. Therefore, the amount of benefits attributable to lost salary—which appear to be simply another form of earned income—will be deducted from any back pay award Mason receives.[11] To do otherwise would make Mason more than "whole."

An appropriate order follows.

## ORDER

For the reasons given in the accompanying memorandum, it is hereby ORDERED and DIRECTED that:

(1) defendant's motion for partial summary judgment (*doc.* #37) is GRANTED insofar as it seeks dismissal of plaintiff's claim under the Pennsylvania Human Relations Act, and plaintiff's claim under the Pennsylvania Human Relations Act is DISMISSED, and

(2) defendant's motion for partial summary judgment is DENIED insofar as it seeks at this stage to limit plaintiff's damages to the salary difference between her position and Christine Devore's position.

---

**11.** Even so far as it may be appropriate not to deduct workmen's compensation benefits in certain cases, the case. at bar is not one of those instances. In the two most recent cases declining to deduct workmen's compensation—*Knafel* and *Cline, supra*—the discriminatee's injuries were part of the employer's discriminatory design and directly caused by the employer, rather than, at most, an indirect byproduct of the discriminatee's being forced to remain in a different job (as in the case at bar). In *Knafel*, the district court found that the defendant employer, although aware that plaintiff had back problems, assigned her heavy work in an effort to cause her absenteeism and create a pretext for her eventual dismissal. Similarly, in *Cline*—a gender harassment case—various agents of the defendant employer, although aware that plaintiff was suffering from job-related stress, continued to harass her and call her "syphilis," and the employer was held liable for battery. In both cases, the court would not offset workmen's compensation awards for injuries directly resulting from defendant's principal acts of discrimination. Given that damage awards in discrimination cases are designed, in part, to deter illegal conduct, it may make sense to force employers to internalize the full cost of—or even overpay for—injuries that were not only foreseeable but also willfully caused by the employer. There is no suggestion that Mason's automobile accident falls within this category of conduct.