**Samuel J. CHRISTMAN, Plaintiff,**

v.

**CIGAS MACHINE SHOP, INC, et al., Defendants.**

**Civil Action No. 01–4155.**

United States District Court, E.D. Pennsylvania.

Dec. 5, 2003.

Jane M. Shields, Frock & Shields, L.L.P., West Chester, PA, for Plaintiff.

James Griffin, Exton, PA, Thomas K. Schindler, Brown, Mayhart, Martin And Schindler, LLP, West Chester, PA, for Defendant.

## OPINION

POLLAK, District Judge.

Plaintiff Samuel J. Christman, a resident of Delaware, brought this diversity action against Pennsylvanian defendants Cigas Machine Shop, Inc. ("Cigas Machine") and Craig Cigas, claiming that they unlawfully terminated Mr. Christman in retaliation for filing a workers' compensation claim. Before the court is the defendants' motion for summary judgment.

### Factual and procedural background

Mr. Christman, in his complaint, alleges that he began work at Cigas Machine in 1993. While working as a machinist for Cigas Machine, Mr. Christman suffered a severe injury to his right hand on July 18, 1997. Mr. Christman missed eight days of work immediately after suffering the injury, and was away from work for some time after each of several surgical operations performed as a result of the injury. During each of these periods, Cigas Machine either paid Mr. Christman his full salary or facilitated payment of his workers' compensation benefits.[1] Mr. Christman alleges that when he returned to work after one or two of the operations, Cigas Machine assigned him to "distasteful, difficult and meaningless jobs," including cleaning out from under machines, sweeping the driveway, picking up sticks, cutting down trees, raking leaves, and assembling piles of brush. According to Mr. Christman, upon returning to work on or about September 23, 1999, after an operation, Mr. Cigas told him that he did not need "your kind," and

that Mr. Christman no longer had a job with Cigas Machine.

On November 8, 2000, Mr. Christman and Cigas Machine executed a Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the Workers' Compensation Act ("Release Agreement"). The Release Agreement provided for Mr. Christman to be paid $91,323 for his "total" disability brought about by the injury to his right hand. The Release Agreement also committed Cigas Machine to continue to provide for "reasonable and necessary medical treatment which is causally related to the [hand] injury."

On August 15, 2001, Mr. Christman filed suit in this court, claiming that he was discharged in retaliation for the exercise of his rights under the Workers' Compensation Act, 77 P.S. § 1 et seq., and that the defendants are therefore subject to liability under the common law of Pennsylvania as articulated in *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998). Mr. Christman seeks compensation of more than $150,000 for past and future earnings, emotional distress, humiliation, and loss of life's pleasures. In addition, Mr. Christman suggests that the conduct of the defendants was extreme and outrageous, justifying an award of punitive damages.

On August 16, 2002, I denied the defendants' motion to dismiss and alternative motion for a more definite statement. On April 11, 2003, the defendants filed another

1. Although the pleadings and supporting documents do not indicate the date when Mr. Christman filed his application for workers' compensation benefits, it is presumed that he did so on the date of his injury—July 18, 1997—or shortly thereafter. The deposition testimony of Mr. Cigas indicates that there was some communication by facsimile between Cigas Machine and its workers' compensation carrier, CNA, on July 28, July 30, and August 6, 1997, concerning Mr. Christman's claim. *See* Deposition of Craig Cigas at 30–33. It is undisputed that Mr. Christman received workers' compensation benefits for periods of his employment with Cigas Machine, and also during the period between his alleged discharge in September 1999 and the Release Agreement executed in November 2000.

dispositive motion—the instant motion for summary judgment.

**Standard for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of a genuine issue of material fact is reflected in evidence from which a reasonable juror could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the court must view the evidence, and draw all reasonable inferences, in the light most favorable to the non-moving party. *See Dici v. Commonwealth*, 91 F.3d 542, 547 (3d Cir.1996). However, the non-moving party may not defeat a motion for summary judgment by the mere assertion, not documented by record evidence, that the facts are sufficient to support his or her claims. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362–63 (3d Cir.1992). Where "the non-moving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." *Wetzel v. Tucker*, 139 F.3d 380, 383 n. 2 (3d Cir.1998).

**Discussion**

■ In Pennsylvania, it is presumed that employment is at-will, and that "an employer 'may discharge an employee with or without cause, at pleasure, unless restrained by some contract.'" *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 614 (3d Cir.1992) (quoting *Henry v. Pittsburgh*

*& Lake Erie R.R. Co.*, 139 Pa. 289, 21 A. 157 (1891)). Pennsylvania law does recognize, however, a nonstatutory cause of action for wrongful discharge under circumstances that violate a clear mandate of public policy. *Woodson v. AMF Leisureland Ctrs., Inc.*, 842 F.2d 699, 701 (3d Cir.1988); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). In *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998), the Supreme Court of Pennsylvania explicitly recognized one instance that would violate public policy, holding that "an at-will employee who alleges retaliatory discharge for the filing of a workers' compensation claim has stated a cause of action for which relief may be granted under the law of this Commonwealth." *Id.* at 1232. Pursuant to the decision in *Shick*, Mr. Christman brings this action for wrongful discharge, alleging that the defendants unlawfully terminated him in retaliation for filing his workers' compensation claim.

In their summary judgment motion, Cigas Machine and Mr. Cigas raise five arguments: (1) that this court lacks subject-matter jurisdiction over the suit because the $75,000 jurisdictional threshold is not satisfied; (2) that Mr. Cigas, as an individual, cannot be liable to Mr. Christman for wrongful discharge; (3) that Mr. Christman released the defendants from liability; (4) that Mr. Christman has not met the prima facie requirements for a case of retaliatory discharge; and (5) that Mr. Christman has presented no evidence to support his claim for punitive damages.

*1. Subject-matter jurisdiction*

■ Initially, I must address the contention that this court lacks subject-matter jurisdiction over the instant suit. When this court can determine "with legal certainty" that the amount in controversy in a given case does not satisfy the jurisdiction-

al minimum of $75,000.00, dismissal is appropriate. *Nelson v. Keefer*, 451 F.2d 289, 292 (3d Cir.1971). "The test then is not what amount the plaintiff claims in the *ad damnum* clause of his complaint, but rather, whether it appears to a 'legal certainty' that he cannot recover an amount above the jurisdictional minimum." *Id.* at 293.

In this lawsuit, Mr. Christman claims damages related to: (a) loss of past earnings, (b) loss of future earnings, (c) emotional distress, (d) humiliation, (e) loss of life's pleasures, and (f) punitive damages.

With respect to the claimed damages related to lost earnings, the defendants emphasize that Mr. Christman received workers' compensation benefits for the period between his separation from Cigas Machine and the date of the Release Agreement. That fact, combined with the settlement amount of $91,323, leads the defendants to conclude that Mr. Christman is barred from seeking further recovery for lost earnings. In response, Mr. Christman suggests that the "collateral source rule bars introduction of the evidence of the workers' compensation benefits received by plaintiff for the purpose of reducing his wage loss claim for a separate harm, wrongful discharge." I am not persuaded by Mr. Christman's argument. As I explained in *Mason v. Ass'n for Independent Growth*, 817 F.Supp. 550 (E.D.Pa. 1993):

> The workmen's compensation benefits ... are distinguishable from collateral benefits such as unemployment compensation and social security benefits. First, workmen's compensation benefits, unlike unemployment compensation and social security, come directly and entirely from the employer or from insurance premiums paid wholly by the employer. Therefore, offsetting these benefits does not bestow an unjust windfall on the wrongdoer or create a risk of loss of

deterrence value. Secondly, a workmen's compensation award—which is pegged specifically to the employee's salary—is "a purely compensation measure" designed to provide recompense commensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employer.

. . . . .

> Therefore, at least as far as [an employee's] disability pay is attributable to lost salary, refusal to deduct this sum would result in both punitive double payment by [the employer] and unwarranted double recovery by [the employee]. Therefore, the amount of benefits attributable to lost salary—which appear to be simply another form of earned income—will be deducted from any back pay award [an employee] receives. To do otherwise would make [an employee] more than "whole."

*Id.* at 556–58 (citations and footnotes omitted). I observed in a footnote to the quoted text that a plaintiff "may offer proof that some portion of the sum awarded to her was, under Pennsylvania law, allocated for physical impairment." *Id.* at 557 n. 10. Therefore, any recovery by a plaintiff will not necessarily be reduced by the entire amount of workers' compensation benefits received; only the sum "attributable to lost salary" and not "physical impairment" will be subtracted. In this case, the parties have not suggested what the appropriate apportionment between salary and impairment might be (although the defendants' submission assumes that the entire amount represents lost wages).

Assuredly, any jury award that Mr. Christman would receive if this case goes to trial would be reduced by the portion of the $91,323 attributed to lost wages. In addition, the award would be reduced by whatever other compensation attributed to lost wages that Cigas Machine paid to Mr.

Christman during the time that elapsed between his September 1999 separation from Cigas Machine and the date of the Release Agreement—November 8, 2000.

The defendants also suggest that, because Mr. Christman certified in the Release Agreement that his disability was "total," he is now barred from seeking recompense from lost wages. After all, the argument goes, Mr. Christman could not have worked if he were totally disabled and therefore lost no wages. This line of reasoning assumes, however, that the phrase "total disability" necessarily connotes permanence. It does not. 77 P.S. § 511 (providing that no payment of total disability compensation is required after the disability ceases); see Turner v. Jones & Laughlin Steel Corp., 479 Pa. 618, 389 A.2d 42, 43 (1978) ("Absent an improvement in appellant's condition terminating his total disability, these payments are available for his lifetime ...."); 4156 Bar Corp. v. Workmen's Comp. Appeal Bd., 63 Pa.Cmwlth. 176, 438 A.2d 657, 658–59 (1981) ("[T]otal disability is presumed to continue unless and until competent examination and testimony disclose otherwise."). Mr. Christman's assertion of total disability in 2000 did not foreclose the possibility that he might subsequently recover the physical capacity to earn wages.[2]

Because issues of material fact remain regarding Mr. Christman's level of disability and the amount of compensation he has received to date for lost wages, I cannot conclude with legal certainty that the jurisdictional amount in controversy has not been satisfied.

### 2. Prima facie case of retaliatory discharge

■ The Pennsylvania Supreme Court has not yet set forth the elements of a prima facie case of retaliatory discharge, so courts in this district borrow the analytical structure used in Title VII retaliation claims. Landmesser v. United Air Lines, Inc., 102 F.Supp.2d 273, 277–78 (E.D.Pa. 2000); see also Kennelly v. Pa. Tpk. Comm'n, 208 F.Supp.2d 504, 517 (E.D.Pa. 2002). In order to present a prima facie case for retaliation in Title VII cases, "a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir.2000). The defendants maintain that Mr. Christman has failed to advance an adequate prima facie case because, inter alia, (a) there was no adverse employment action, and (b) even if there was adverse employment action, there was no causal link between Mr. Christman's workers' compensation claim and the adverse action.

■ The first question raised by the defendants' argument—whether Mr. Christman was discharged on or about September 23, 1999—is not appropriate for resolution on summary judgment. Whether Mr. Cigas told Mr. Christman that he did not need "your kind" at Cigas Machine, and whether Cigas Machine effectively discharged Mr. Christman at that time, are genuine issues of material fact.

■ Even assuming that Cigas Machine discharged Mr. Christman in September 1999, however, there is no evidence that the filing of a workers' compensation

---

**2.** Indeed, Mr. Christman currently operates a power washing and roof coating company known as Do It Rite. Motion for Summary Judgment, Exhibit 2B, at 4 (Deposition of Samuel J. Christman at 15).

claim motivated the alleged discharge. The mere fact that an alleged discharge occurs subsequent to the filing of a claim is insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir.1997); *Alexander v. Red Star Express Lines of Auburn, Inc.*, 646 F.Supp. 672, 681 (E.D.Pa.1986).[3] As the court ruled in *Landmesser*,

> A plaintiff must produce at least *some* evidence that connects the dots between her claim for workers' compensation and her termination, such as adverse personnel action promptly after her workers' compensation claim was made, statements by supervisors referencing her claim, documents from the employer discussing her claim with respect to her termination, etc....

*Landmesser*, 102 F.Supp.2d at 278.

■ I do not find any evidence in the instant case that suggests a connection between Mr. Christman's workers' compensation claim or his receipt of workers' compensation benefits and his alleged discharge. Over two years passed between the workers' compensation claim itself, filed in 1997, and the events of September 1999. While the mere passage of time is not conclusive proof against retaliation, *Robinson v. S.E. Pa. Transp. Auth.*, 982 F.2d 892, 894–95 (3d Cir.1993), it makes the causal link more attenuated. "[I]f both a significant amount of time has elapsed and the plaintiff does not offer any other evidence supporting a causal link, he has not established the causation element of his *prima facie* case." *Sharkey v. Fed. Express Corp.*, No. CIV.A.98–CV–3351, 2000 WL 230330, at *6 (E.D.Pa. Feb. 29, 2000).

The only pieces of evidence that Mr. Christman puts forth to indicate a causal link are: (1) that Cigas Machine assigned him to "distasteful, difficult and meaningless jobs" following his return from one or two of his operations; (2) that he was allegedly discharged immediately upon his attempt to resume work in September 1999; and (3) that Mr. Cigas allegedly discharged him with the words, "I do not need your kind." At his deposition, Mr. Christman characterized this comment as referring to "someone with an injury like mine." Dep. of Samuel Christman at 81. Notably, he did not testify that he interpreted "your kind" as referring to someone who had filed a workers' compensation claim.

Even viewed in a light most favorable to Mr. Christman, this evidence does not connect his alleged discharge with his workers' compensation claim. At most, it supports an inference that he was discharged due to his disability—not in response to his application for workers' compensation. In this regard, the facts of this case resemble those of *Landmesser*. In *Landmesser*, an airline customer service representative alleged that her termination in November 1996 was in retaliation for her application for workers' compensation benefits in June 1994. The plaintiff's primary evidence was a comment made by her supervisor that he was "sick of people complaining about me, how they have to shut my doors, how they have to sling my bags, how they have to basically carry my weight...." *Landmesser*, 102 F.Supp.2d at 278. Both the court

---

**3.** Where courts have made an exception to this rule, it has only been where the close temporal proximity between the two events was unusually suggestive—for example, when the employer took prompt action to fire an employee after the employee engaged in a protected activity. *See, e.g., Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989) (inferring causal connection when employee was fired two days after filing discrimination claim). No such unusually suggestive circumstances are present here.

and the plaintiff herself characterized the comment as critical of her lack of physical ability following her injury. *See id.* at 278 n. 8. Consequently, the court found that

> [p]laintiff here conflates a claim for discharge due to disability with a claim for discharge in response to her prior application for workers' compensation. At most, this comment reveals the supervisor's general frustration at plaintiff's inability to perform all the tasks regularly associated with her position. In no way would this comment support a reasonable jury finding that plaintiff was discharged in retaliation for an application for workers' compensation benefits.

*Id.* at 278 (internal footnote omitted). The court concluded that the plaintiff, having failed to establish a causal connection between her workers' compensation claim and her termination, could not maintain an action for wrongful discharge. I reach the same conclusion in the instant case.

Furthermore, the allegation that Cigas Machine sought to retaliate against Mr. Christman for his application for workers' compensation is inconsistent with the company's regular facilitation of his workers' compensation payments. Mr. Christman received benefits during the period of recovery after each operation on his hand while he worked for Cigas Machine. Moreover, Cigas Machine's workers' compensation carrier provided Mr. Christman with workers' compensation benefits during the period between his alleged discharge in September 1999 and the Release Agreement executed in November 2000.[4] Finally, Cigas Machine agreed in the Release Agreement to pay Mr. Christman

$91,323—more than five years' worth of the statutory workers' compensation payments for total disability.[5] This evidence is inconsistent with Mr. Christman's claim that Cigas Machine had a retaliatory motive when it allegedly discharged him.

**Conclusion**

Because Mr. Christman has failed to present a genuine issue of material fact as to a causal connection between his workers' compensation claim and his alleged discharge, I conclude that no reasonable juror could find for Mr. Christman on the claim of wrongful discharge and that the defendants are entitled to summary judgment as a matter of law. Because I reach this conclusion, I do not address the defendants' three other arguments for summary judgment. In an order accompanying this opinion, the defendants' motion for summary judgment is granted.

### ORDER

For the reasons given in the accompanying opinion, it is hereby ORDERED that:

(1) Defendants' Motion for Summary Judgment is GRANTED.

(2) JUDGMENT IS ENTERED in favor of defendants Cigas Machine Shop, Inc. and Craig Cigas, and against plaintiff Samuel J. Christman.

(3) Plaintiff's complaint is DISMISSED with prejudice.

(4) This case is CLOSED for statistical purposes.

---

4. Although Mr. Christman alleges in his complaint that "Cigas Machine Shop unsuccessfully sought to terminate Mr. Christman's workers' compensation benefits after it fired Mr. Christman," Complaint ¶ 19, Mr. Christman has presented no evidence to support this allegation.

5. The Release Agreement states that the weekly compensation rate for total disability, based upon Mr. Christman's weekly wage at the date of his injury, was $350.53.