**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOUTON, INC., t/a the Original Oyster House, Respondent.**

**No. 86–3770.**

United States Court of Appeals, Third Circuit.

Argued June 19, 1987.

Decided July 1, 1987.

---

L. Pat Wynns (argued), Rosemary M. Collyer, John E. Higgins, Jr., General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, Charles Donnell and Linda J. Dreeben, N.L.R.B., Washington, D.C., for petitioner.

Ronald L. Gilardi (argued), Gilardi, Cooper and Gismondi, Pittsburgh, Pa., for respondent.

Before SEITZ and MANSMANN, Circuit Judges, and BISSELL, District Judge.*

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This case comes before us upon the application of the National Labor Relations Board ("NLRB" or "the Board"), pursuant to 29 U.S.C. § 160(e), for enforcement of an order issued by the Board against Louton, Inc., t/a The Original Oyster House ("the Oyster House" or "the company"). For the reasons stated below we will enforce the order of the Board.

### I.

On May 1, 1985, 770 F.2d 1073, this court entered a judgment enforcing the Board's order of April 30, 1984, which found that The Original Oyster House had discriminated against Denise Churchel, Delores De-Geer and Doreen Dunmire. The Board's order required, *inter alia,* that the Oyster House make the discriminatees whole for loss of earnings suffered as a result of unfair labor practices.

The parties were unable to agree upon the amount of backpay to be awarded and a backpay proceeding was therefore instituted. After a hearing, the Administrative Law Judge rejected the Oyster House's affirmative defenses and ordered the company to pay $471.08 to Denise Churchel, $15,199.16 to Delores DeGeer, and $25,466.77 to Doreen Dunmire (plus interest). DeGeer was also awarded $580, plus inter-

---

* Honorable John W. Bissell of the United States District Court for the District of New Jersey, sitting by designation.

est for health insurance benefits and medical expenses.

On September 30, 1986 the Board adopted the ALJ's order. This application for enforcement was timely filed.

## II.

In this action, the Oyster House argues that the Board's Order is not supported by substantial evidence, and specifically alleges error in the Board's calculation of tip income and reliance on the tip income evidence when that evidence was in direct conflict with federal income tax returns. The company further contests specific portions of the backpay awards for Ms. Dunmire and Ms. DeGeer, and alleges error in the Board's failure to strike certain testimony of Ms. Dunmire.

Our review of the Board's remedy to effectuate the policies of National Labor Relations Act is limited. "The Board's order will not be disturbed 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.'" *Fibreboard Corporation v. National Labor Relations Board,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964) quoting *Virginia Electric and Power Co. v. National Labor Relations Board,* 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943). On questions of law, appellate review of the Board's decision is plenary, although that decision is entitled to deference due to the Board's expertise in labor matters. *See, N.L.R.B. v. L & J Equipment Co., Inc.,* 745 F.2d 224 (3d Cir.1984), *reh'g denied,* 750 F.2d 25. The Board's findings of fact in a backpay proceeding will be overturned if the record, considered as a whole, shows no substantial evidence to support those findings. *See Universal Camera Corporation v. National Labor Relations Board,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Utilizing these standards, we find no merit in the contentions before us here, and we will enforce the Board's order.

## III.

■ In this case, the Oyster House challenges the Board's findings of fact concerning the amount of the discriminatees' tip income. The company asserts that the evidence is of no value because the discriminatees admitted under oath to reporting different tip income to the Internal Revenue Service, and the evidence is not credible because the facility in which the discriminatees worked simply could not support such tip income.

We find that the record, when considered as a whole, shows substantial evidence to support the Board's findings. The tip income evidence consisted of DeGeer's and Dunmire's contemporaneously recorded tip information while Churchel maintained contemporaneous tip records in 1984, and specifically recorded tips in 1985 "for this lawsuit." In addition, the ALJ specifically observed the demeanor of the discriminatees and concluded that they were telling the truth. Moreover, the company failed to produce gross receipts records which would have allowed the ALJ to ascertain whether the percentage of gross sales that was being claimed as tips was reasonable. Finally, the discriminatees maintained the veracity of their tip information in the face of prosecution for perjury or tax evasion.

We find that the ALJ addressed all the relevant factors bearing upon the discriminatees' credibility. Where credibility determinations are based at least partially on the ALJ's assessment of demeanor, they are entitled to great deference, as long as relevant factors are considered and the resolutions are explained. *Hanlon & Wilson Co. v. NLRB,* 738 F.2d 606 (3d Cir.1984). We find that the Board's order is supported by substantial evidence.

■ The company claims that its duty to pay backpay to Ms. Dunmire ended on November 30, 1982, the date as of which she testified that she would not go back to work even if offered reinstatement. The Board ordered backpay for Ms. Dunmire from October, 1982 until July, 1985. The company cites *Trident Seafoods Corporation,* 275 NLRB No. 3, 118 LRRM 1639 (1985), for the proposition that when an

unlawfully terminated employee testifies to any unwillingness to return to work, the backpay period is tolled.

The company's reliance upon *Trident* is misplaced. *Trident* involved a situation where strikers testified as to their unwillingness to return to work, rather than nonstriking employees as are involved here. We find that the issue is more properly presented in *Smyth Manufacturing Co.*, 277 NLRB No 66 (1985), wherein the Board reiterated its view that backpay runs until the employer makes a valid reinstatement offer, notwithstanding a discriminatee's statement that he would not accept reinstatement if it were offered.

Since the Oyster House did not offer Ms. Dunmire unconditional reinstatement until July 9, 1985, we find no error in the Board's conclusion that Ms. Dunmire's backpay continued to run until that date.

The company also contests the award of backpay to Ms. DeGeer for the second and third quarters of 1984, and her award of backpay beyond 1983, due to degenerative disc disease. The company claims that Ms. DeGeer failed to report her earnings during two quarters of 1984 when she worked at a club/restaurant-bar called the Italian Club.

Ms. DeGeer's testimony at the backpay proceeding indicated that, rather than employment, her work at the Italian Club in 1984 consisted of helping an old friend, or doing a favor for him by filling in several times for other employees. Ms. DeGeer testified that in return for her help, she was given $50–$60, and several bags of groceries, over approximately a four week time span. Ms. DeGeer did not report these earnings for 1984.

■ The company relies on *American Navigation*, 268 NLRB 426 (1983), for the assertion that a concealment of employment earnings may negate backpay awards for those periods. In *American Navigation*, the Board held, however, that a forfeiture of backpay awards was to be applied in cases where the claimant willfully deceives the Board and not where the failure to report earnings is through inadvertence.

In this case the Board found that Ms. DeGeer treated the money as a gift and did not willfully deceive the Board. Indeed, she readily testified to the circumstances surrounding that compensation and to her view that she was doing a favor for a friend. We therefore find that the Board's order refusing to deny her backpay during the second and third quarters of 1984 is supported by substantial evidence.

■ The company further asserts that Ms. DeGeer's degenerative disc disease precluded her from being able to perform waitressing duties and that she was therefore unavailable for work. An employer is not generally liable for backpay for periods when an employee is unavailable for work due to a disability. *See Canova v. NLRB*, 708 F.2d 1498 (9th Cir.1983); *American Manufacturing Co.*, 167 NLRB 520 (1967).

The evidence showed that Ms. DeGeer had had problems with her back while still working at the Oyster House, but had returned to work after treatment. After she left the Oyster House, she retained two other waitressing jobs, which she left due to insufficient income or because the restaurant went out of business. In addition, she has worked for over a year as a bridal consultant, a job which requires her to bend, get on her knees, climb stepladders, and carry 15–20 pound bridal gowns.

We therefore find substantial evidence to support the Board's conclusion that the company failed to establish that Ms.DeGeer's disability precluded her from employment.

■ Finally, the company alleges that the Board erred in failing to strike Ms. Dunmire's earnings testimony after she invoked the Fifth Amendment, as this prevented full and effective cross-examination abut her tip income. This error is assigned as failure to comply with 29 C.F.R. § 102.-35(F), authorizing an ALJ to strike all related testimony of witnesses refusing to answer any proper question.

The evidence reveals one question which Ms. Dunmire refused to answer, invoking her Fifth Amendment privilege. She sub-

sequently continued to answer specific questions related to the discrepancies between her tip income records and what she reported to the IRS. Further, Ms. Dunmire authorized the release of her tax returns to the company, and company counsel was permitted to file a motion to reopen the record after examining the returns, if necessary for effective cross-examination.

The conduct of a backpay proceeding and the application of the evidentiary rules lie within the discretion of the administrative law judge. *See Artra Group, Inc. v. NLRB*, 730 F.2d 586 (10th Cir.1984). Moreover, the party claiming injury from the alleged error must show that it suffered prejudice as a result of the ruling, in order for the Board's order to be reversed. *See Carlisle Paper Box Company v. NLRB*, 398 F.2d 1 (3d Cir.1969).

We discern no abuse of discretion by the ALJ in refusing to strike this testimony. Effective cross-examination was conducted by company counsel at the backpay proceeding. In addition, the ALJ indicated his willingness to reopen the record for further cross-examination if requested. Under these circumstances we find no abuse of discretion.

For the reasons stated above, we will enforce the Board's supplemental order.