

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-1995

# 88 Transit Lines v NLRB

Precedential or Non-Precedential:

Docket 94-3492

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"88 Transit Lines v NLRB" (1995). *1995 Decisions.* Paper 164.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/164

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 94-3492


88 TRANSIT LINES, INC.,
Petitioner

v.

NATIONAL LABOR RELATIONS BOARD,
Respondent


On Petition for Review of an Order of the
National Labor Relations Board
(NLRB Docket No. 6-CA-21380)


No. 94-3550


NATIONAL LABOR RELATIONS BOARD,
Petitioner

v.

88 TRANSIT LINES, INC.,
Respondent


On Application for Enforcement of an
Order of the National Labor Relations Board
(NLRB Docket No. 6-CA-20490)


Submitted Pursuant to Third Circuit LAR 34.1(a)
Monday, May 1, 1995

Before:  SLOVITER, Chief Judge, MANSMANN and
ALITO, Circuit Judges

(Filed:  May 3, 1995)

Bruce D. Bagley
McNees, Wallace & Nurick
Harrisburg, PA  17108-1166

        Attorney for Petitioner/Cross-Respondent

Frederick L. Feinstein
    General Counsel
Linda Sher
    Acting Associate General Counsel
Aileen A. Armstrong
    Deputy Associate General Counsel
Charles P. Donnelly
Nancy B. Hunt
National Labor Relations Board
Washington, DC  20570-0001

        Attorneys for Respondent/Cross-Petitioner


                OPINION OF THE COURT

SLOVITER, Chief Judge.

        88 Transit Lines, Inc. (the "Company") has petitioned
this court for review from a final order of the National Labor
Relations Board entered in supplemental backpay proceedings (88
Transit Lines, Inc., 314 N.L.R.B. 324 (1994)) and the NLRB has
cross-applied for enforcement of the same order.

                            I.

        The supplemental backpay proceeding followed our
decision enforcing an earlier NLRB finding that the Company
discriminated against its employees when, shortly after a
        representation election conducted at the Company's
facility, the Company replaced its transit run schedule which had
been in effect for many years, Schedule B, with a Schedule C,
thereby decreasing the total number of fixed transit runs by one
and eliminating run 14, reducing the number of transit runs which

were open for bids, and making the fixed runs subject to discretionary assignment by the Company rather than open for bids based on seniority.  The Board found that the scheduling change violated 29 U.S.C. §§ 158(a)(1) and (3) and ordered the Company to "make employees whole for any losses they may have suffered as a result of these unlawful actions" and this court entered judgment enforcing the order.  See 88 Transit Lines, Inc., 300 N.L.R.B. 177 (1990), enforced, 937 F.2d 598 (3d Cir. 1991).

When the parties failed to agree on the amount of backpay, the Regional Director issued a backpay specification alleging the amount owed to the discriminatees.  Following a hearing, an ALJ recommended amending the backpay specification in two aspects.  First, the ALJ recommended not awarding backpay to fourteen replacement workers who had been hired during the backpay period, reasoning that "such employees have no losses to be restored to them, since they were not employed at the time of the elimination of run 14."  Second, the ALJ recommended treating as interim earnings any amount by which post-unfair labor practice earnings exceeded employee earnings during the base-period year.

The Board refused to adopt these recommended amendments to the backpay specification.  It ordered backpay for all twenty-three employees, including the fourteen replacement employees, and refused to reduce their gross backpay by post-unfair labor practice earnings which exceeded the base period earnings because to do so would "inappropriate[ly] appl[y] . . . the interim earnings' concept to a case involving a violation other than

discharge from employment, and . . . effectively resolve[] uncertainties in favor of the wrongdoer." The Board ordered backpay to be calculated in accordance with the original specification, plus interest and less tax withholdings required by law.

This court has jurisdiction under 29 U.S.C. § 160(e) and (f). On questions of law, appellate review of the Board's decision is plenary, although that decision is entitled to deference due to the Board's expertise in labor matters. NLRB v. Louton, Inc., 822 F.2d 412, 414 (3d Cir. 1987). The Board's findings of fact in a backpay proceeding will be overturned if the record, considered as a whole, shows no substantial evidence to support those findings. Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951). We will not disturb a backpay order "'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.'" Fibreboard Paper Prods. Corp. v. NLRB, 339 U.S. 203, 216 (1964) (quoting Virginia Elec. & Power Co. v. NLRB, 319 U.S. 533, 540 (1943)).

                                II.

It is undisputed that the backpay specification issued by the Regional Director correctly designated the backpay period to be between November 29, 1987, when the Company first instituted the schedule change, and August 18, 1991, when the Company restored run 14, a total of 194 weeks. Both parties also agree that the implementation of schedule C represented a loss to the bargaining unit of 2-3/4 hours of work per day, or 13-3/4

hours per week, and that the wage rate for the discriminatees was $6.75 per hour.

In arguing that the Board's order is not supported by substantial evidence and an abuse of discretion, the Company raises essentially three claims of error: (1) the Board erred in finding that the fourteen replacement drivers were entitled to compensation; (2) the Board erred in declining to treat as interim earnings the amount by which the discriminatees' post-unfair labor practice annual earnings exceeded their base-period year earnings with the Company; and (3) the ALJ's post-hearing amendment of the backpay specification denied the Company procedural due process.[1]

The Company argues that the fourteen replacement drivers are not entitled to compensation for backpay because they were hired after the schedule change went into effect and, thus, they suffered no change in their schedules entitling them to compensation. By way of analogy, it relies on Systems Management, Inc. v. NLRB, 901 F.2d 297 (3d Cir. 1990), to argue

---

[1]. The Company also argues that the backpay specification failed to establish any loss of earnings by any employee during the backpay period and was therefore speculative and an undeserved windfall to the employees. The Company agrees that a compliance officer may employ a formula other than one of the standard formulae when application of the standard formula is not feasible. In this case, the General Counsel specified the names of the twenty-three discriminatees and the number of hours each worked during the backpay period and, applying the backpay formula, calculated that each discriminatee lost $4.04 per week for each week worked during the backpay period. The backpay formula adopted by the Board is reasonable in light of the nature of the violation and is entitled to our deference. See NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 346-47 (1953).

that the Board's award of backpay to the fourteen replacement drivers was punitive rather than compensatory because it "cannot be considered a restoration to any status quo ante, as no status quo ante existed for these employees."  Id. at 308 (quotation omitted).

The Company's reliance on Systems Management, however, is misplaced.  In Systems Management, this court enforced a cease and desist order and a make-whole order where a successor employer failed to offer employment to its predecessor's employees or to recognize their bargaining representative, Local 29, and instead contracted with another union, Local 327, at a substantially lower wage rate.  Id. at 301.  The court declined to enforce a backpay award for new hires affiliated with Local 327 who "if anything . . . were beneficiaries of [the employer's] discriminatory conduct, because the result of [the employer's] decision not to employ the Local 29 workers culminated in the employment of the Local 327 workers."  Id. at 308.

This case presents quite different facts.  The fourteen replacement employees were hired to replace original bargaining unit employees who departed in the normal course of business.  Therefore, the replacement employees cannot be said to be the "beneficiaries" of the discriminatory conduct.  Rather, the change in schedule caused a loss of work for the entire bargaining unit.  The Board correctly found that the remedy was to inure to the benefit of the entire bargaining unit.  The award of backpay to the fourteen replacement employees was not "'punitive or confiscatory'" and was "'reasonably adapted to the

situation that call[ed] for the redress.'"  See Frito-Lay, Inc. v. NLRB, 585 F.2d 62, 68 (3d Cir. 1978) (quoting NLRB v. Townhouse T.V. & Appliances, Inc., 531 F.2d 826, 830 (7th Cir. 1976)).

The Company's second argument is that the Board's refusal to deduct post-unfair labor practice earnings which exceeded base-year earnings from the gross backpay violated the long-standing principle that discriminatees must mitigate damages and that gross backpay must be reduced by interim earnings to derive a net backpay award.  The Company refers us to a leading case on the mitigation doctrine, NLRB v. Madison Courier, Inc., 472 F.2d 1307 (D.C. Cir. 1972), as well as to NLRB guidelines.

This argument must also fail.  It is true that mitigation of loss of earnings is a cardinal principle in the development of remedial orders under the National Labor Relations Act.  See Tubari Ltd. v. NLRB, 959 F.2d 451, 454 (3d Cir. 1992). In this case, however, the higher post-unfair labor practice earnings by bargaining unit members were attributable to fluctuations in the amount of available work during the applicable time period rather than to the restoration of lost work by the Company.  It is reasonable to assume that but for the Company's discriminatory conduct and the elimination of transit run 14, the earnings of the bargaining unit employees might have been still higher.  Thus, the higher post-unfair labor practice earnings were not interim earnings which need be deducted from gross backpay.  The Company has provided us with no authority for its argument that it can avoid the payment of backpay liability

for its discriminatory schedule change simply because discriminatees happened to do better financially during the backpay period than during the base-year period.[2]  The burden was on the Company "to establish facts which would negative the existence of liability to a given employee or which would mitigate that liability."  NLRB v. Brown & Root, Inc., 311 F.2d 447, 454 (8th Cir. 1963).  Accord Buncher v. NLRB, 405 F.2d 787, 789-90 (3d Cir. 1968) (in banc), cert. denied, 396 U.S. 828 (1969).  This it has not done.  We find the Company's argument that the gross backpay should be reduced by the excess earnings to be without merit.[3]

III.

---

[2].  The Company argues that the Board erred when it suggested in its Supplemental Order that the interim earnings principle applies only with respect to employees who have been unlawfully discharged.  It cites Ironton Publications, Inc., 313 N.L.R.B. 1208 (1994), as an example of a case where the Board's backpay order was reduced by interim earnings for a part-time employee whose hours were discriminatorily reduced but who was not fired.  We do not read the Board's Supplemental Order to mean that reduction for interim earnings is never appropriate in a non-discharge case.  Rather, we limit our holding to approval of the Board's rejection of the need to reduce backpay by interim earnings in this case, where the employees continued to work for the same company and there was no showing that they would not have absorbed the hours stipulated to have been lost by the unfair labor practice.

[3].  The Company's final argument is that the ALJ's post-hearing amendment of the backpay specification did not afford the Company an adequate opportunity to produce evidence of employee interim earnings.  In light of our holding that the backpay award need not be reduced by what the Company characterizes as "interim earnings," consideration of the Company's contentions on this issue is unnecessary.

For the reasons set forth, we will deny the Petition for Review of the Order of the National Labor Relations Board issued on July 12, 1994 and grant the Cross-Application for Enforcement of the Order of the National Labor Relations Board issued on July 12, 1994.