**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-3179 & 20-3480
_____

DUPONT SPECIALTY PRODUCTS USA, LLC,
As Successor to E.I. duPont de Nemours and Company,

Petitioner in No. 20-3179

v.

NATIONAL LABOR RELATIONS BOARD

Cross-Petitioner in No. 20-3480
_____

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board
(No. 05-CA-222622)
_____

Argued: July 7, 2021
_____

Before: SHWARTZ, KRAUSE, and FUENTES, *Circuit Judges.*

(Opinion filed: August 13, 2021)

David R. Broderdorf
Michael E. Kenneally **[ARGUED]**
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

Theresa A. Queen
David G. Barger
Greenberg Traurig LLP

1750 Tysons Boulevard, Suite 1000
McLean, VA 22102

Justin F. Keith
Greenberg Traurig LLP
One International Place, Suite 2000
Boston, MA 02110

Robert M. Goldich
Greenberg Traurig LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103

   *Counsel for Petitioner/Cross-Respondent*

David Habenstreit
Kira Dellinger Vol
Eric Weitz **[ARGUED]**
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570

   *Counsel for Respondent/Cross-Petitioner*

_____

OPINION[*]

_____

FUENTES, *Circuit Judge*.

DuPont Specialty Products ("DuPont") petitions for review of an Order of the National Labor Relations Board (the "Board") directing it to engage in decision bargaining before subcontracting its paid, volunteer Emergency Response Team (the "ERT"). The Board cross-petitions for enforcement of the Order. On the record before us, we find that

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

substantial evidence supports the Board's Order. We will therefore deny the petition for review and grant the cross-petition for enforcement.

I.

DuPont produces synthetic fibers at its Spruance Plant in Chesterfield County, Virginia (the "Plant" or "Spruance"). Because of the inherently dangerous nature of this process, DuPont has elected to maintain an internal cadre of first responders since at least 1974. Until 2018, this service was provided by the ERT. The ERT was comprised of volunteers who held other positions throughout the Plant but could be called at any time to respond to emergencies. This team was made up of both non-union and union members, the latter represented by the Ampthill Rayon Workers, Inc. Local 992 (the "ARWI") and the International Brotherhood of Electrical Workers (the "IBEW"). ERT volunteers were compensated for their work and for attending required trainings, often resulting in significant overtime pay.

In 2018, about a year after Richard Lukhard was appointed the new Chief of Emergency Services at Spruance, ARWI and IBEW were informed that DuPont would be replacing the ERT with dedicated subcontractors. According to Lukhard, who oversaw the ERT, this decision was motivated by significant safety concerns. For example, he noted that recruiting and training volunteers for the ERT was growing increasingly difficult, particularly as more senior members retired. He also noted the difficulty of ensuring that ERT members passed trainings and obtained the required experience to perform their duties effectively given the relatively sparce occurrence of emergencies at the Plant.

3

At a meeting with union representatives, DuPont indicated that it would not bargain over its decision to subcontract, but that it was willing to bargain over the effects of its decision. ARWI accordingly filed a charge with the Board's regional office, alleging that DuPont had violated Sections 8(a)(5) and (1) of the National Labor Relations Act (the "Act")[1] by refusing to engage in collective bargaining over a "term[] and condition[] of employment."[2] Several months later, the Board's General Counsel issued an unfair-labor-practice complaint based on this charge.

An ALJ held a three-day evidentiary hearing, ultimately concluding that DuPont had violated the Act as alleged. Specifically, it discredited Lukhard's testimony that he was motivated by safety concerns when he recommended subcontracting the ERT, finding that this rationale was not present in any of the contemporaneous documentary evidence and that there was no evidence that Lukhard had shared this concern with the senior management ultimately responsible for making the subcontracting decision. The Board adopted the ALJ's factual findings in full, and entered an Order directing DuPont to engage in decision bargaining and to, among other things, compensate the ERT members for lost overtime.

---

[1] Sections 8(a)(5) and (1) are codified at 29 U.S.C. § 158(a)(5) and (1).

[2] AR 575. While the charge was pending, DuPont proceeded to implement its subcontracting decision in September of 2018, as scheduled.

DuPont timely filed this petition for review, and the Board cross-petitioned for enforcement of its Order. For the reasons that follow, we will deny DuPont's petition for review and grant the Board's cross-petition for enforcement.

## II.[3]

Decisions to subcontract fall into a grey area between those that "have only an indirect and attenuated impact on the employment relationship" and therefore are never subject to mandatory collective bargaining, and those that "almost exclusively" affect "an aspect of the relationship between employer and employee" and are therefore always subject to collective bargaining.[4] Instead, they are categorized as decisions that have "a direct impact on employment," but that are focused on concerns "wholly apart from the employment relationship."[5] As such, they only trigger mandatory collective bargaining under the Act when "the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business."[6] Consistent with this framework, "[t]he focus in determining whether a particular management decision requires bargaining under Section 8(a)(5) is not the employer's decision to subcontract, but whether 'requiring bargaining over this sort of decision will

---

[3] The Board had jurisdiction pursuant to 29 U.S.C. § 160(a), and this Court has jurisdiction over a final Order of the Board pursuant to 29 U.S.C. § 160(e), (f).

[4] *First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 677 (1981) (internal quotation marks omitted).

[5] *Id.*

[6] *Id.* at 679.

advance the neutral purposes of the Act.'"[7]  The relevant inquiry, then, is whether "the employer's decision was prompted by factors . . . within the union's control and therefore 'suitable for resolution within the collective bargaining framework.'"[8]

On appeal, however, DuPont maintains that decisions to subcontract only require mandatory collective bargaining when labor cost is their "sole" motivating factor.  In support, it looks to language from *Dorsey Trailers, Inc. v. NLRB*.[9]  In that case, we stated that "[a] company's decision to subcontract which is based solely on a desire to eliminate or reduce overtime is subject to mandatory union bargaining since to require the employer to bargain about the matter would not significantly abridge his freedom to manage the business."[10]  Because the company's "sole motivation" was not a desire to eliminate overtime, the Court concluded that the decision was not subject to mandatory decision bargaining.[11]  However, this language did not displace our longstanding balancing test for determining whether a subcontracting decision triggers mandatory bargaining.  Instead, it merely contrasted a hypothetical subcontracting decision based purely on cost, which would clearly be subject to mandatory bargaining, with the employer's rationale in that case, which was based on "a need to fill orders and maintain a healthy, viable business" in

---

[7] *Furniture Rentors of Am., Inc. v. NLRB*, 36 F.3d 1240, 1248 (3d Cir. 1994) (quoting *First Nat'l*, 452 U.S. at 681).

[8] *Id.* (quoting *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 214 (1964)).

[9] 134 F.3d 125 (3d Cir. 1998).

[10] *Id.* at 133 (internal quotation marks and citation omitted).

[11] *Id.*

6

the face of a backlog of orders and an inability "to find a qualified pool of experienced welders."[12]  It is not the case, then, that labor costs must be the company's "sole" motivating factor in order to trigger mandatory bargaining.  At the same time, the hypothetical about a decision based solely on labor costs in *Dorsey Trailers*—which would certainly be subject to bargaining—also makes it clear that merely considering some labor costs as part of a decision does not automatically make the decision subject to mandatory bargaining.  Instead, where labor costs are one among many motives, we employ the fact-intensive balancing test from *First National*.

Applying the appropriate test here, substantial evidence supports the Board's conclusion that DuPont's decision to subcontract was motivated by factors entirely within the union's control.  Specifically, the Board and the ALJ pointed to PowerPoint slides and internal email correspondence showing that though "the actual decision-making process of upper management . . . [was] opaque," the evidence demonstrated "that the anticipated savings in overtime and training costs were significant factors, repeatedly emphasized in the explanations for the contracting out."[13]  The ALJ also credited ARWI's testimony that cost savings was offered as a rationale for the subcontracting decision when the two parties met.  As a result, the ALJ found that, although "the substantial evidence of labor cost motivation in the decision to subcontract was met with the insistence of [DuPont's] witnesses that cost savings had nothing to do with the matter," labor costs "were manifestly

---

[12] *Id.* at 132-33.

[13] App. at 14.

a factor in the decision to contract out."[14]  Although DuPont "began to omit the cost savings rationale from its discussions" once the unfair-labor-practice charge was filed, "[b]ehind the scenes, the cost savings to be netted from the contracting of the ERT remained important to DuPont."[15]  Because of our extremely deferential standard of review,[16] and because labor costs are traditionally subject to collective bargaining,[17] we will deny DuPont's petition for review.

But that is not to say that we accept all of the ALJ's factual findings at face value. In particular, we note that despite the ALJ's conclusion that Lukhard's proposed safety rationale was merely "contrived for litigation,"[18] various contemporaneous documents show that safety was a concern for Lukhard and at least some DuPont employees at the outset.  The problem for DuPont, rather, is that none of this evidence shows that safety was actually contemplated by the relevant decisionmakers—in other words, by the upper management that was ultimately responsible for deciding to subcontract the ERT.  Had DuPont wished to rebut the substantial evidence that labor cost was what prompted its decision, it could have introduced either documentary or testimonial evidence to this effect.

---

[14] App. at 14.

[15] App. at 14.

[16] *See 1621 Route 22 W. Operating Co., LLC v. NLRB*, 825 F.3d 128, 144-45 (3d Cir. 2016).

[17] *See Fibreboard*, 379 U.S. at 213-14.

[18] App. at 15.

To be clear, we do not mean to suggest that bargaining is required every time a company considers labor costs in its decision-making process; indeed, it is difficult to imagine a decision that would not weigh economic factors to some extent. And where safety is concerned, the Board has recognized that if an employer's subcontracting decision is meant to prevent safety risks to the public or to company property, that decision may not be subject to mandatory bargaining[19]—a point which the Board reiterated here.[20] We need not decide the issue because, based on the record before us, DuPont did not produce evidence of a safety rationale on the part of the actual decisionmakers, as it would have needed to in order to rebut the evidence showing that labor costs prompted the subcontracting decision. Substantial evidence therefore supports the Board's finding that DuPont's decision was, in fact, amenable to bargaining.

III.

DuPont raises two additional arguments, neither of which is meritorious. First, it argues that the Board misapplied its "contract coverage" test, as set out in *MV Transportation, Inc.*[21] In other words, DuPont maintains that it was not required to bargain because its decision to subcontract the ERT was governed by its existing collective bargaining agreement ("CBA") with ARWI. But the CBA contains no provision covering DuPont's right to unilaterally eliminate ERT work opportunities. Total silence on the issue

[19] *See Oklahoma Fixture Co.*, 314 NLRB 958, 960 (1994).

[20] *See* App. at 15 (citing *Oklahoma Fixture*, 314 NLRB at 960).

[21] 368 NLRB No. 66 (Sept. 10, 2019).

is the opposite of "granting the employer the right to act unilaterally."[22]  Second, DuPont

argues that the ALJ erred by excluding two pieces of safety-related evidence.  We review

an ALJ's evidentiary rulings for abuse of discretion.[23]  Here, the ALJ committed no such

abuse where this evidence would have been cumulative of Lukhard's testimony and, more

importantly, went to issues that were never in dispute and would have had minimal

probative value.  We are therefore unpersuaded that the Board's decision was unsound for

any of the reasons proffered by DuPont.

IV.

For the foregoing reasons, we will deny DuPont's petition for review and grant the

Board's cross-petition for enforcement.

---

[22] *Id.* at *2.  And, as a practical matter, DuPont routinely bargained with the union over changes to the ERT, further undercutting its argument that the unilateral decision to suspend the program was covered by the CBA.

[23] *See NLRB v. Louton, Inc.*, 822 F.2d 412, 416 (3d Cir. 1987).