**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

Nos. 22-3462, 23-1290 & 23-1299

---

COLART AMERICAS INC.,

v.

NATIONAL LABOR RELATIONS BOARD

Colart Americas Inc.,
Petitioner in No. 22-3462
National Labor Relations Board,
Petitioner in No. 23-1290

&

NATIONAL LABOR RELATIONS BOARD,
Petitioner in No. 23-1299

v.

STAFF MANAGEMENT GROUP INC

---

On Petition for Review, Cross-Application for Enforcement, and Application for Enforcement of a Decision and Order of the National Labor Relations Board
(NLRB Docket No. 22-CA-252829)

---

Argued January 30, 2024

---

Before: KRAUSE, PORTER, and CHUNG, Circuit Judges

(Filed February 21, 2024)

Robert A. Boonin [**ARGUED**]
Dykema
2723 S State Street
Suite 400
Ann Arbor, MI 48104

Sean F. Darke
Dykema
39577 Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304

Mark J. Magyar
Dykema
201 Townsend Street
Suite 900
Lansing, MI 48933

Counsel for Colart Americas Inc.

Ruth E. Burdick
Elizabeth A. Heaney
Joel Heller [**ARGUED**]
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570

Counsel for National Labor Relations Board

Steven S. Glassman
Fox Rothschild
49 Market Street
Morristown, NJ 07960

Counsel for Staff Management Group Inc.

OPINION[*]

CHUNG, Circuit Judge.

The National Labor Relations Board ("Board") issued a Decision and Order ruling that Colart Americas Inc. ("Colart") and Staff Management Group Inc. ("SMG"; collectively with Colart, "the Employers") violated the National Labor Relations Act ("NLRA"). Colart petitioned for review, and the Board cross-applied for enforcement against Colart and applied for enforcement against SMG. Because we see no grounds to disturb the Board's ruling, we will deny Colart's petition and grant the Board's cross-application and application for enforcement.

## I. BACKGROUND[1]

John Hargrove was employed by SMG, a temporary staffing agency that assigned him to work at Colart's distribution center in Piscataway, New Jersey. Hargrove filed a charge with the Board concerning events during his assignment at Colart. Based on Hargrove's charge, the Board's General Counsel issued a Complaint against Colart and SMG as joint employers.[2] The Complaint alleged that the Employers violated: 1) Section 8(a)(1) of the NLRA when a supervisor, Carlos Trejo, spoke to workers about how they

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Because we write for the parties, we recite only facts pertinent to our decision.

[2] While Colart petitions other aspects of the decision against it, it does not contest the finding that Colart and SMG were joint employers of Hargrove.

should bring complaints; 2) Section 8(a)(1) when Colart discharged Hargrove for his complaints of racism and other working conditions; and, 3) Sections 8(a)(1) and 8(a)(4) when Colart discharged Hargrove for threatening to go to the Board. See 29 U.S.C. §§ 158(a)(1), (4).

Following a hearing, an Administrative Law Judge ("ALJ") decided that the Employers had committed the alleged violations. Colart filed objections and exceptions and the Board upheld the ALJ's decision. Colart and the Board then filed the instant actions, which we consolidated.[3]

## II. DISCUSSION[4]

The Board upheld the Section 8(a)(1) violation arising from Trejo's statements at a December 2, 2019 staff meeting and the violations of Section 8(a)(1) and 8(a)(4) arising from Colart's discharge of Hargrove. Colart argues that the Board's conclusions were not supported by substantial evidence and argues that the Board committed evidentiary errors. We disagree.

---

[3] SMG did not file objections and exceptions to the ALJ's decision or petition for review of the Board's order.

[4] The Board had jurisdiction under 29 U.S.C. § 160(c). We have jurisdiction under 29 U.S.C. § 160(e) and (f).

"We accept the Board's factual findings if they are supported by substantial evidence" and "exercise plenary review over questions of law and the Board's application of legal precepts." Spectacor Mgmt. Grp. v. NLRB, 320 F.3d 385, 390 (3d Cir. 2003). We "defer to the Board's credibility determinations, and will reverse them only if they are 'inherently incredible or patently unreasonable.'" Grane Health Care v. NLRB, 712 F.3d 145, 149 (3d Cir. 2013) (quoting St. George Warehouse, Inc. v. NLRB, 420 F.3d 294, 298 (3d Cir.2005)). We review an ALJ's evidentiary rulings for abuse of discretion. See NLRB v. Louton, Inc., 822 F.2d 412, 416 (3d Cir. 1987).

A. Violation Arising from Trejo's Statements at the December 2 Meeting

The Board found that Trejo's December 2 statements violated Section 8(a)(1). The Board relied upon evidence that Trejo acknowledged workers' concerns about racism and mistreatment, told workers to follow the chain of command with their complaints, and threatened that there would "be a problem" if they discussed complaints amongst themselves instead. Colart Americas, Inc., 372 N.L.R.B. No. 9 (Nov. 23, 2022). These actions can constitute interference and substantial evidence supported the Board's decision. See, e.g., NRLB v. Garry Mfg. Co., 630 F.2d 934, 940 (3d Cir. 1980) (employer violated Section 8(a)(1) by "threats of reprisals or adverse consequences" for engaging in protected activities).

Colart also argues that the Board should not have adopted the ALJ's decision to discount Trejo's own testimony and instead to credit Hargrove's assertion that Trejo told workers there would be a problem if they discussed complaints among themselves. Trejo's intent does not matter, though, because the relevant question is whether his words would reasonably tend to interfere with employees' rights. Garry Mfg. Co., 630 F.2d at 937; see also Allegheny Ludlum Corp. v. NLRB, 301 F.3d 167, 176 (3d Cir. 2002). Under that objective standard, we see no error in the Board's conclusion that Trejo's statements rose to the level of "interference."

Colart also argues that the Board should not have adopted the ALJ's decision to credit Hargrove's testimony, over Trejo's, that Trejo told workers there would be a problem if they discussed complaints among themselves. Colart gives no reason why that decision was "inherently incredible or patently unreasonable," though. Grane Health

Care, 712 F.3d at 149 (quoting St. George Warehouse, Inc., 420 F.3d at 298).[5] Colart further argues that the Board erred in finding that Trejo did not qualify his statement to employees by telling them they also "could talk amongst themselves." Colart Americas, Inc., 372 N.L.R.B. No. 9 (Nov. 23, 2022). The Board explained, however, that it "carefully examined the transcript" and determined there was "no basis for such a finding because no witness, including Trejo, testified that he made such a statement." Id. Colart identifies no evidence that Trejo made this statement and instead relies on Trejo's testimony that he never told employees that "they could not talk to each other." Opening Br. 12. This does not establish, however, that Trejo affirmatively stated that employees could talk amongst themselves.

Given the above, we reject Colart's arguments and conclude that substantial evidence supports the Board's decision that Trejo's statements violated Section 8(a)(1). We will thus deny Colart's petition as to this violation.

B. Violations Arising from Colart's Discharging Hargrove

The Board also decided that Colart's discharge of Hargove violated the NLRA in that: 1) Colart interfered with Hargrove's right to engage in concerted activity, in

---

5 Colart repeatedly asserts that the Board erred by treating as testimony the opening statement of the Board's General Counsel, particularly his reference to Trejo's comment that there "was going to be a problem" if employees talked among themselves. Opening Br. 6. But as Colart recognizes, the General Counsel's statement plainly derived this comment from Hargrove's testimony that Trejo told employees there "was going to be a problem," id. at 11–12. Nowhere does the Board's decision suggest that it understood that the phrase "was going to be a problem" as originating from the General Counsel, rather than from a witness. Thus, Colart's claim that the Board improperly treated the General Counsel's opening statement as testimony does not withstand scrutiny.

violation of Section 8(a)(1), by discharging him in response to his complaints of racism and the removal of chairs; and 2) Colart interfered with Hargrove's right to complain to the Board or threaten to do so, and discharged him because of his exercise of that right, in violation of Section 8(a)(1) and Section 8(a)(4).[6]

1. Substantial Evidence

Colart argues that the Board's conclusion that Hargrove's complaints were protected "concerted activities" is not supported by substantial evidence. Here, the Board relied upon evidence that Hargrove complained to Trejo and another supervisor, Isaiah Holmes, about alleged racism against multiple Black employees; that other workers made similar complaints; that Hargrove had discussed complaints with fellow workers; and that when Trejo addressed the complaints that Hargrove and others made, he treated them as group complaints. This satisfies the threshold of substantial evidence required. See Spectacor, 320 F.3d at 390.

Colart also asserts that Hargrove's complaints were individual "gripes," rather than concerted activity. Opening Br. 26. In determining whether conduct is concerted activity, our focus is "whether the employee intends to induce group activity or whether the employee's action bears some relation to group action in the interest of the employees." MCPC v. NRLB, 813 F.3d 475, 484 (3d. Cir. 2016). The group nature of the interests asserted here is not negated by the fact that Hargrove may have sought to

---

[6] Section 8(a)(4) prohibits "discharg[ing] or otherwise discriminat[ing] against an employee because he has filed charges." 29 U.S.C. § 158(a)(4).

personally benefit from his complaints or that he complained about personal concerns alongside group ones. See id. at 485–86 (an employee can engage in concerted activity where he "voiced his grievances for the benefit of others as well as himself"). Thus, this argument fails to persuade us that the Board's decision lacked sufficient evidentiary support.

Colart also argues that substantial evidence does not establish that it discharged Hargrove because of his protected activity (making group complaints and threatening to go to the Board). The Board applied the appropriate burden-shifting framework here. See Wright Line, 251 N.L.R.B. 1083, 1087 (1980), enforced, 662 F.2d 899 (1st Cir. 1981).[7] The Board was satisfied the General Counsel met its burden through evidence including that at least two decisionmakers knew about Hargrove's protected activity and that the decision to discharge him was close in time to Hargrove's protected activity. The Board found Colart did not meet its burden because its proffered reasons were implausible (poor performance that was never documented or established through statistics maintained by Colart) or false (stating Hargrove did not work on Black Friday despite the fact that Colart's records reflected he worked eighteen hours that day). We conclude that substantial evidence supports the Board's decision that Hargrove's protected activity was a motivating reason for his discharge.

---

[7] The Board's General Counsel must first show that the protected conduct was a "substantial" or "motivating" factor in the employer's action. Wright Line, 251 N.L.R.B. 1083, 1087 (1980). If the General Counsel makes its required showing, then "the burden shifts to the employer to demonstrate that it would have reached the same decision absent the protected conduct." Id.

2. Evidentiary Ruling

Colart also argues that it was prejudiced in two ways by the ALJ's decision to exclude evidence reflecting events after December 2, 2019, the date that Colart discharged Hargrove.[8] Both challenges fail. First, Colart argues it should have been permitted to offer evidence that Colart laid off other workers at the end of December to "show[] that Colart would have reassigned Hargrove regardless of any protected activity." Opening Br. 15; see also Wright Line, 251 N.L.R.B. at 1087. That evidence is irrelevant, though, because Colart did not argue at the hearing that it discharged Hargrove as part of a future, larger layoff.

Colart also argues that it should have been permitted to admit evidence of post-December 2 activity to show that Hargrove suffered no "adverse employment action" such as termination or missed pay and benefits. Opening Br. 14; Reply Br. 3. We reject this argument because Section 8(a)(1) does not require Hargrove to establish that he was terminated or missed any pay or benefits; he only need demonstrate that there was "interfere[nce]" with his rights. 29 U.S.C. § 158(a)(1).[9] To the extent that Colart offered

---

8 We review an ALJ's evidentiary rulings for abuse of discretion. See NLRB v. Louton, Inc., 822 F.2d 412, 416 (3d Cir. 1987). Colart does little to argue that the ALJ abused its discretion. Rather, Colart argues that the ALJ's evidentiary rulings were "prejudicial" errors, an issue we consider when reviewing for harmless error after first finding an abuse of discretion. Opening Br. 9. See, e.g., PDK Lab'ys Inc. v. U.S. D.E.A., 362 F.3d 786, 799 (D.C. Cir. 2004).

9 Colart cites cases in which the Board has described certain Section 8(a)(1) violations using the language of "adverse effect[s]" on the employee. See, e.g., Wright Line, 251 N.L.R.B. at 1083. That language does not create a new threshold of adversity

such evidence to establish that Hargrove was not discharged per Section 8(a)(4),[10] even if we were to conclude the Board abused its discretion in excluding post-December 2 evidence, such error would be harmless. Colart has not proffered any evidence that was not already considered or that would counter evidence that Hargrove never worked again for Colart or SMG.

## III. CONCLUSION

For the foregoing reasons, we will deny Colart's petition and grant the Board's cross-application and application for enforcement.

---

met only through, for example, harm to terms and conditions; rather, it is merely a way of analyzing whether an action constitutes interference per Section 8(a)(1).

[10] Colart uses the term "termination" instead of "discharge" and, as noted above, appears to be making an extra-textual Section 8(a)(1) argument. Colart might also be arguing that Colart sought to offer post-December 2 evidence to support its argument that it merely reassigned Hargrove back to SMG with whom it was not a joint employer (as Colart *did* contest joint employment at the hearing, though not here).